**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LINDA J. LANE ) | Case No. 17-32237-thf |
| ) | |
| ) | Chapter 13 |
| **Debtor** ) | |
| ) | |
| _____) | |
| ) | |
| LINDA J. LANE ) | Adv. No. 19-03003-thf |
| ) | |
| **Plaintiff** ) | |
| ) | |
| V. ) | |
| ) | |
| SARAH DEAN, ) | |
| ) | |
| KEVIN DEAN, ) | |
| ) | |
| and ) | |
| ) | |
| WILLIAM W. LAWRENCE ) | |
| In His Capacity as ) | |
| Standing Chapter 13 Trustee ) | |
| ) | |
| **Defendants** ) | |
| _____) | |

\* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on the Debtor-Plaintiff Linda Lane's Motion for Partial Summary Judgment against Creditor-Defendants Sarah and Kevin Dean ("the Deans"). Ms. Lane moves the Court for entry of partial summary judgment solely as to Count II of her adversary complaint, which seeks to equitably subordinate the Deans' claim to all other claims against the

1

bankruptcy estate and transfer the Deans' lien to the bankruptcy estate on grounds that the Deans continue to refuse to accept payments.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This case is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2). This Court has jurisdiction pursuant to 11 U.S.C. § 510(c) to issue a final judgment under principles of equitable subordination resolving the claim. For reasons set forth below, the Court will grant the Debtor's Motion for Partial Summary Judgment, and equitably subordinate the Deans' claim to all other allowed claims against the bankruptcy estate.

## FACTUAL AND PROCEDURAL BACKGROUND

This case's lengthy, litigious history is well-documented at this point. The Court will therefore attempt to succinctly summarize the key events that led to this latest adversary proceeding. On July 14, 2017, debtor Linda Lane filed a Chapter 13 petition for relief, listing one secured claim: a debt owed to Sarah and Kevin Dean in the amount of $128,895.57, fully secured by a judgment lien[1] on Ms. Lane's residence. Ms. Lane filed her Chapter 13 Plan the same day, which provided that she would pay the Trustee $137,400.00 via sixty monthly installments of $2,290.00, and the Trustee would, after deducting his statutory fees, distribute the remainder of the funds to the Deans, whose judgment lien would be avoided and would be guaranteed to receive not less than 98% of their claim in full.

On August 28, 2017, the Deans, who were then represented by counsel, filed an objection to confirmation of the Chapter 13 Plan, arguing that their judgment lien could not be avoided and that their claim was entitled to payment at Kentucky's 12% statutory interest rate in effect when

---

[1] This money judgment was issued following state-court litigation and a binding arbitration award against Ms. Lane in favor of the Deans after mold was discovered in the house Ms. Lane sold to the Deans.

2

the judgment was entered. On September 27, 2017, the Court held a hearing on the Plan, where the parties ultimately agreed that the Deans' judgment lien could not be avoided and that the Plan must pay the Dean's claim in full at the interest rate according to *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). After taking the matter under advisement, the Court granted the Deans' counsel's motion to withdraw from the case, and on October 11, 2017, entered an order finding that 4.25% was the appropriate *Till* interest rate. On October 16, 2017, having resolved the sole objection to confirmation, the Court entered the Confirmation Order, which the Deans did not appeal. The Confirmation Order was later amended to increase Debtor's monthly payments to $2,540.00 to ensure the Deans' claim would be 100% paid in full at 4.25% interest. Aside from the Deans' claim, the only other claim filed against Ms. Lane was a credit card debt of $348.71 owed to Citicard.

In the months to follow, however, the Deans, now proceeding *pro se*, would file a series of unsuccessful objections and appeals bordering on harassment of the Debtor and the judicial system's resources. As a result, this Chapter 13 mutated into an anomaly of a case which has thus far required a dozen hearings before this Court and has resulted in four appeals (nos. 18-8005, 18-8038, 18-8040, 18-8042) before the Bankruptcy Appellate Panel of the Sixth Circuit. Rather than recount the extensive procedural history here[2], this Court will instead quote a particularly demonstrative passage from the BAP's most recent opinion "finding that the Bankruptcy Court did not err by imposing sanctions against the Deans for filing a frivolous adversary proceeding:"

> . . . It is obvious the Deans do not understand the system. They do not understand the effect of a confirmation order. They do not understand the purpose or legitimacy of plan modification. As creditors whose claims will be paid in full through the chapter 13 case, yet who have obstreperously objected throughout the

---

[2] The Court takes judicial notice of the detailed procedural history and record citations Debtor provides in her adversary complaint. *See* [R. 1] at 5-23. Fed. R. Evid. 201(b)(2); Fed. R. Bankr. P. 9017 (making the Federal Rules of Evidence applicable in bankruptcy cases); *see also MacMillan Bloedel, Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) ("A court may take judicial notice of related proceedings and records in cases before the same court.").

>case, they evidently do not understand the purpose of chapter 13, which appears in this case to be working as Congress intended (except for the multiplication of litigation at the behest of the Deans). And perhaps most importantly, they do not understand that the Debtor's lawful exercise of the privileges accorded by a bankruptcy filing does not amount to fraud. Due to these misunderstandings, the Deans have ignored the Bankruptcy Court's admonitions to stop filing pleadings that unnecessarily increase litigation expenses and harass the Debtor. By ignoring these warnings, the Deans are only increasing expenses and delaying payment of their own claim. And now, due to their own actions, they are decreasing their 100% dividend by the amount of sanctions the Bankruptcy Court ordered them to pay. In other words, they are only hurting themselves. It is their choice to continue down this same road by continuing to file objections, refusing to cash their dividend checks, and increasing the Debtor's litigation expenses, but in the end, the Deans may see the favorable terms of the Debtor's chapter 13 plan reduced either by a decrease in the Debtor's resources or by an increase in their own liability to the Debtor or her bankruptcy estate.

[R. 188 at 17–18]. To date, the Court has twice imposed monetary sanctions upon the Deans pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, *see* [R. 97] (requiring a $5,000 penalty paid to the Court) and [R. 110] (awarding Debtor's attorneys' fees and costs on the Motion for Sanctions), and has issued two money judgments against the Deans in favor of Ms. Lane, *see* [Rs. 125 and 134] (respectively awarding Debtor $6,033.50 and $2,641.00)[3]. Ms. Lane has also sought and obtained an order holding the Deans in contempt of Court for filing an offer to settle into the record in violation of Fed. R. Evid. 408, one of many instances of misconduct on their part. [R. 97]. Yet the Deans have not paid the sanctions as ordered and continue to take actions verging on abusive litigation tactics.[4]

Notably, since this Chapter 13 case was initiated, Ms. Lane has routinely made monthly plan payments to the Trustee as required. The Deans, meanwhile, have refused to accept any of the Trustee's payments to them. The Deans' ongoing refusal to receive the funds eventually forced the Chapter 13 Trustee to seek guidance from the Court, and the Court held a hearing on the matter,

---

[3] All record citations, unless expressly stated otherwise, are citations to the main Chapter 13 case (no. 17-32237).
[4] Most recently, on February 18, 2020, the Deans filed a Motion to Compel the Trustee to Produce Documents and Responses to Questions regarding his Distribution Report. That matter is scheduled for a hearing on March 16, 2020.

4

asking why the Deans were refusing to accept payments. Mrs. Dean explained: "[W]e're not going to accept the money on this account or under this plan that we did not agree to until this goes forward into the appeals court and they decide, we're not going to cash any of the checks." [R. 87 at 16]. Following the hearing, and after giving the Deans ample additional opportunity to reconsider their refusal to accept payments, the Court issued an Order on September 11, 2018 requiring the Trustee to "hold all disbursements to be made to Kevin and Sarah Dean in an escrow account pending further Order of Court or upon motion made by the creditors herein, Kevin and Sarah Dean, for disbursement." [R. 114]. The Chapter 13 Trustee has since confirmed that all checks issued to the Deans have since been stopped due to their not being negotiated, and as of January 30, 2020, the Chapter 13 Trustee is holding a total of $62,043.75 in the escrow account.

On February 1, 2019, Debtor filed the underlying adversary complaint against the Deans. Count II of the complaint seeks equitable subordination of the Deans' claim pursuant to 11 U.S.C. § 510(c) of the Bankruptcy Code. The Debtor's equitable subordination count alleges that the Deans "intentionally, knowingly, or recklessly engaged in wrongful conduct directed towards Ms. Lane by repeatedly advancing vexatious and meritless arguments in the Bankruptcy Litigation intended only to harass Ms. Lane," and that the Deans will be unjustly enriched if their claim is not subordinated and their lien transferred to Ms. Lane's bankruptcy estate. While Debtor only seeks partial summary judgment on the equitable subordination count, she does not waive her remaining claims. In response in opposition to partial summary judgment, the Deans raise various arguments that the Court "condoned the Debtor's bankruptcy fraud," that Debtor presented "zero material evidence of inequitable conduct by the Deans," and that genuine issue of fact still exist to preclude an award of partial summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. To prevail on a motion for summary judgment, the moving party must "demonstrate to the court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the non-moving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). Although the court must draw all inferences in favor of the non-moving party, it must present significant and probative evidence in support of its complaint; the mere "existence of a scintilla of evidence" will be insufficient. *Id.*

In deciding a summary judgment motion under Rule 56, this Court must determine whether, when viewed in the light most favorable to the Deans (the party opposing the motion), *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record in the Chapter 13 Case and the related proceedings forecloses any genuine issue concerning any fact material to the equitable subordination claim such that Debtor is entitled to judgment thereon. *See* Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted). Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party; if the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

## EQUITABLE SUBORDINATION STANDARD

The Bankruptcy Code provides that the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate

11 U.S.C. § 510(c). Equitable subordination is intended to be remedial, not punitive, and tailored "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Citicorp Venture Capital, Ltd. v. Comm. Creds. Holding Unsec. Claims* (*In re Papercraft Corp.*), 323 F.3d 228, 233–34 (3d Cir. 2003). The Court must therefore remain mindful of "the proportionality of the remedy to the injury that has been suffered by those who will benefit from the subordination." *Schubert v. Lucent Techs. Inc.* (*In re Winstar Comm'ns, Inc.*), 554 F.3d 382, 413–14 (3d Cir. 2009) (quoting *Citicorp*, 160 F.3d at 991).

The equitable subordination doctrine traditionally involves a three-part test, "three conditions [which] must be satisfied before exercise of the power of equitable subordination is appropriate." *See Benjamin v. Diamond* (*In re Mobile Steel Co.*), 563 F.2d 692, 699 (5th Cir. 1977). According to the *Mobile Steel* test, as a prerequisite to a bankruptcy court's exercise of its equitable powers, it must find:

(i) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

7

>   (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Id.* at 700 (citations omitted).  The United States Supreme Court has cited with approval the standards for equitable subordination articulated by the Fifth Circuit in *Mobile Steel*.  *U.S. v. Noland*, 517 U.S. 535, 538–39 (1996).  The Sixth Circuit has also adopted *Mobile Steel*'s three-part test.  *See First Nat'l Bank v. Rafoth* (*In re Baker & Getty Fin. Servs.*), 974 F.2d 712, 717–18 (6th Cir. 1992).  If the conditions of the *Mobile Steel* test are met, bankruptcy courts may subordinate bad actors' claims "only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct" in order to ensure that "equitable relief is remedial rather than penal."  *Mobile Steel*, 563 F.2d at 701.

## DISCUSSION

In what is essentially a single-creditor case, the creditor continues to refuse to accept payments which are readily available to them, which the Debtor has dutifully made from day one.  Not only this, but the creditor continues to pursue vexatious litigation tactics, filing endless meritless objections and appeals, all while refusing payment.  This Court finds equitable subordination to be the appropriate solution for this unorthodox situation.  The Court has authority under Section 510(c) of the Bankruptcy Code to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim" and to transfer any such subordinated lien to the bankruptcy estate.

The Court is satisfied that all three *Mobile Steel* elements are satisfied here.  First, there is no question that the Deans' conduct throughout the entirety of this bankruptcy has amounted to unreasonable, inequitable conduct.  Rather than regurgitate the various instances of such misconduct, the Court will instead reference the detailed chronology provided by the Debtor.  *See* Motion for Partial Summary Judgment in Adv. No. 19-3003, [R. 38 at 25–27].  This illustrative

8

birds-eye overview of the case's painfully-litigious history illustrates that the Deans were first sanctioned in March of 2018 for filing a settlement offer into the record in violation of the rules of evidence, then sanctioned again in April of 2018 after filing a complaint seeking revocation of the confirmation order, and then held in contempt and sanctioned a third time in May of 2019 for refusing to sit for a previously-scheduled deposition. In its opinion affirming the sanctions awards in appeals 18-8038 and 18-8040 (which were consolidated), the BAP observed that "it is telling that the sanctions have apparently not deterred the Deans from continuing to file frivolous documents, adversary proceedings, and appeals, suggesting, perhaps, that the award was too low." [R. 188 at 16].

Additionally, the Deans have a history of personally attacking the Debtor, her attorneys, and the integrity of the Chapter 13 Trustee and the Court. The Deans have previously stated, among other things, that the "acts undertaken by Debtor and her Attorneys…were intended to cause harm to the Deans," that "every party involved has had full knowledge that the Deans' claims have always been supported by the undeniable materially false facts in the Debtor's Schedules and throughout this Bankruptcy Court record," that the "Debtor's Schedules are undeniable proof that she in fact committed bankruptcy fraud," that she "was aided by [her attorney] Neil Bordy in doing so, and the Trustee remained silent to the fact," and that "[t]his Court's failure to take any affirmative action to stop the Debtor and her Attorneys unlawful and fraudulent actions is the direct result of the contamination of the Bullitt County Circuit Court judiciary when they so boldly attempted to defraud the Honorable Judge Rodney Burress." *See* Answer in Adv. No. 19-3003, [R. 16 at 5–6]. These are but a handful of instances of the type of baseless attacks asserted by the Deans against the parties and courts. Despite their contention that there is "zero material evidence of inequitable conduct by the Deans," the record is in fact replete with examples of such inequitable

9

conduct by the Deans. The first *Mobile Steel* equitable subordination element– that "claimant must have engaged in some type of inequitable conduct" – is met.

Second, the Court is satisfied that the Deans' ongoing misconduct has resulted in injury to "creditors of the bankrupt" and has conferred an unfair advantage on the claimant. *Mobile Steel*, 563 F.2d at 699. Ms. Lane's confirmed plan was only funded to pay her lawyers the standard $3,750.00 "no-look fee," yet due to the nature of this case, namely the unforeseen complications resulting from the Deans' repeated appeals and objections, Ms. Lane's attorneys have expended a considerable amount more than their initial fee contemplates. As a result, Ms. Lane's lawyers have applied for, and have received, three separate interim fee awards for $30,630.00, $32,398.50, and $26,747.00. *See* [Rs. 152, 187, 195]. But as of December 2019, Debtor's attorneys have received only $9,533.50. [R. 203 at 2]. The funds to which they are entitled are still sitting with the Trustee, being effectively held hostage by the Deans' refusal to accept the funds, given that they are first in line in terms of priority. The Court concurs that these additional expenditures would not have occurred but for the Deans' repeated refusal to simply abide by the confirmation order, and that each additional refusal of funds causes greater hardship on Ms. Lane, her attorneys, and ability of the estate to function effectively. Where the second *Mobile Steel* element contemplates subordination "to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct," and such harm is apparent here, the second element is met.

Third and finally, equitable subordination of the Deans' claim is not inconsistent with 11 U.S.C. § 510(c). As noted above, equitable subordination is explicitly authorized by § 510(c) of the Bankruptcy Code, and its application does not otherwise conflict with another provision of the Code. As Debtor notes, Section 502 of the Code, which pertains to the allowance of claims, specifically contemplates this type of result: "A claim that has been allowed or disallowed may be

reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). The Court finds this equitable result to be in line with other courts that have equitably subordinated claims based on the creditor's misconduct. In *Principal Mutual Life Insurance Co. v. Langhorne*, the creditor's administrative claim for post-petition funding of estate property tax and other expenses was equitably subordinated to the trustee's and his counsel's administrative claims for fees and costs, due to the creditor's "protracted and abusive litigation" which harmed the estate by causing it to incur an additional $400,000 in fees. *Principal Mut. Life Ins. Co. v. Langhorne* (*In re 848 Brickell Ltd.*), 243 B.R. 142 (S.D. Fla. 1998); *see also Citicorp Venture Capital, Ltd. v. Comm. Creds. Holding Unsec. Claims* (*In re Papercraft Corp.*), 323 F.3d 228, 231–32 (3d Cir. 2003) (where a creditor's improper litigation tactics delayed confirmation of the plan and required debtor to incur nearly three million dollars in professional fees, the bankruptcy court subordinated the creditor's claim to the debtor's professional fees and those of other claimholders). Where the third and final *Mobile Steel* element is met, subordination is warranted.

## CONCLUSION

In light of the well-documented history of the abusive litigation tactics by the Deans, equitable subordination of their claim is appropriate at this juncture. Ms. Lane's obligations to pay the Trustee $2,540.00 each month will remain the same, but the Deans' allowed claim for $130,608.57 will be subordinated to all other claims which have been and may in the future be allowed against the bankruptcy estate, including attorneys' fees. The Deans' claim will be transferred to the Trustee. By separate Order, the Court will schedule a pretrial conference to address the remaining issues and unresolved counts in this case. A judgment will be contemporaneously filed with this memorandum opinion.

11

Thomas H. Fulton
United States Bankruptcy Judge

Dated: February 27, 2020

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **LINDA J. LANE** | ) | Case No. 17-32237-thf |
| | ) | |
| | ) | Chapter 13 |
| **Debtor** | ) | |
| _____ | ) | |
| | ) | |
| **LINDA J. LANE** | ) | Adv. No. 19-03003-thf |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| **SARAH DEAN,** | ) | |
| | ) | |
| **KEVIN DEAN,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **WILLIAM W. LAWRENCE** | ) | |
| **In His Capacity as** | ) | |
| **Standing Chapter 13 Trustee** | ) | |
| | ) | |
| **Defendants** | ) | |
| _____ | ) | |

\* \* \* \* \*

## JUDGMENT

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that partial summary judgment is rendered in favor of the Plaintiff, Linda Lane, as to Count II of her adversary complaint, and as a result:

1) the Deans' allowed claim of $130,607.57 is equitably subordinated to all other claims which have been and may in the future be allowed against Ms. Lane's bankruptcy estate, including attorneys' fees; and

2) the Standing Trustee is ordered forthwith to pay to Ms. Lane's counsel all funds available for distribution until such time as all allowed administrative claims of counsel, including those which may be allowed by subsequent order, have been paid in full.

**IT IS FURTHER ORDERED** that this matter shall come before the Court for a hearing on March 16, 2020, to address the remaining counts and any other issues still pending.

*[Signature]*
Thomas H. Fulton
United States Bankruptcy Judge

Dated: February 27, 2020